.IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs September 20, 2017

## STATE OF TENNESSEE v. TOMMY LEE HOUSER, JR.

**Appeal from the Criminal Court for Knox County**
No. 105733        Steven W. Sword, Judge

_____

**No. E2017-00987-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Tommy Lee Houser, Jr., of felony theft. After a sentencing hearing, the trial court classified the Defendant as a career offender and imposed a mandatory twelve year sentence. On appeal, the Defendant asserts that the evidence supporting his conviction is insufficient and that the trial court erred in applying the Class D felony offense classification rather than the "new" Class E felony offense classification. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk (on appeal), and Aubrey Davis (at trial), Knoxville, Tennessee, for the appellant, Tommy Lee Houser, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from a truck being stolen from a car lot in Knoxville, Tennessee. For his role in this offense, a Knox County grand jury indicted the Defendant for theft of property valued at $1,000 or more but less than $10,000, and vandalism of property valued at $1,000 or more but less than $10,000. At trial, the parties presented the following evidence: Robert D. Williams testified that he was the sales manager at Manis

Motors.  On January 20, 2015, Mr. Williams recalled speaking with the Defendant at the car lot about a teal Ford Ranger truck.  The Defendant was waiting for some sort of "backpay," and Mr. Williams told the Defendant, "Well, if it's still here, you can buy it."

That night, he received a call that the same Ford Ranger truck had been taken from the property.  The gates surrounding the car lot had been knocked down.  The following morning, the truck was located approximately a half mile from the car lot at Lonsdale Market.  The truck was returned to Manis Motors, but it was damaged.  Mr. Williams recalled that there was damage to the right front headlight, the hood, the marker light, and that the right rear tire "was busted completely."  Mr. Williams estimated the value of the truck at $1,600 to $1,800 and the cost of repair to the gates at $1,400 to $1,600.

On cross-examination, Mr. Williams agreed that other individuals had looked at the truck on January 20.  No one took the truck on a "test-drive" on that day but prospective drivers had done so on the days leading up to the theft.  Mr. Williams recalled that the truck had been on their lot for five or six days at the time it was stolen.

Michael Cooper, a Knoxville Police Department ("KPD") officer, responded to a call about a hit and run at Manis Motors.  When he arrived, he observed damage caused by a vehicle leaving the lot and pushing the fence down.  Officer Cooper saw paint transfer on one of the fence posts.  The paint was a teal color.  Approximately an hour later, Officer Cooper was dispatched to the Lonsdale Market to look for a potential vehicle that might have been connected to the incident at Manis Motors.  When he arrived at the location, the Defendant was already in custody.

After speaking with the initial caller, who reported the "hit and run," and the owner of Manis Motors, Officer Cooper was able to conclude that a Ford Ranger was missing from the lot.  At the Lonsdale Market, Officer Cooper noticed that the truck the Defendant had been driving was a similar color to the paint transfer from the damaged fence at Manis Motors, as well as the same make and model as the vehicle missing from the car lot.  Officer Cooper confirmed that the vehicle identification number ("VIN") on the truck at the Lonsdale Market matched the VIN for the missing Manis Motors truck.

Wilma Jones testified that in January 2015 she lived on Rudy Street.  From the front porch of her residence, she could see Lonsdale Market.  Ms. Jones explained her relationship to the Defendant as a lengthy one during which they had dated, lived together, broken up, and ultimately remained friends.  Ms. Jones recalled that on the night of January 20, 2015, the Defendant walked to her house from one of her neighbor's houses.  The Defendant had a liquor bottle with him and appeared to be "drunk."  Ms. Jones sent the Defendant away reminding him that he was not allowed to be there when he was intoxicated.  Later that night, Ms. Jones heard what sounded like a truck in her

driveway. Ms. Jones looked out the window and saw a small cab, teal-green, pick up truck. She saw the Defendant in the passenger seat of truck but was unable to identify the driver. The truck drove up and down the street, so Ms. Jones went outside to get a better look. She described the driver as tall and wearing his hair "shaved real close."

Ms. Jones watched as the driver of the truck backed into a parking space at Lonsdale Market and then she walked down to the market. She saw the driver and the Defendant exit the truck and speak briefly before the driver got into a navy blue "Honda or something" with a spoiler on the trunk and drove away. After Ms. Jones reached the market, the Defendant asked her if she liked the truck. He told her that it was "his" and that he was going to buy it with the money he would receive from "disability." Ms. Jones inquired about why the vehicle did not have a "drive-out" tag, and the Defendant suggested that "[m]aybe" it had been "lost." Ms. Jones observed that one of the truck's tires was flat. Ms. Jones told the Defendant that he was not "legal" to drive and also should not be driving because he was intoxicated.

Ms. Jones testified that she suspected that the vehicle had been stolen, so she called the non-emergency number to notify the police. Ms. Jones said that she thought the man she had seen driving the truck had left the stolen truck with the Defendant. When asked by the prosecutor if she remembered telling the police that the Defendant started the truck "two or three times, [and] tried to get [her] to ride to Merchant's,"Ms. Jones confirmed that she made that statement to police and that the statement was true. Ms. Jones further confirmed that she told the police that the Defendant said to her, "Get in and ride with me. I bought this out of my disability back pay." Ms. Jones said that she declined to ride with the Defendant because he was not "legal" and because the truck did not have vehicle tags.

On cross-examination, Ms. Jones testified that, at the time of these events, the Defendant had just been released from jail, and she was concerned about his welfare. She confirmed that she walked down to the market and called the police because she did not want the Defendant to get in trouble.

Brian Mason, a KPD officer, testified that during the early morning hours of January 21, 2015, he responded to a call about a suspicious vehicle, possibly stolen. When Officer Mason arrived at the Lonsdale Market he observed a Ford truck matching the description of a reported stolen vehicle. Officer Mason spoke with Ms. Jones and the Defendant. Ms. Jones told the officer that she had observed the Defendant driving the truck so she walked down to the market to make sure the Defendant did not drive again. The Defendant told the officer that "his friend" had been driving the truck and then parked the truck at the market and left by foot. The Defendant then told the officer that

he wanted to get a beer with Ms. Jones at Merchant's but she refused so he "brought the truck back and parked it on the scene."

Officer Mason spoke with the owner of the Lonsdale Market and the owner disclosed that the surveillance cameras were not working. Officer Mason said that he attempted to locate the keys to the truck but was unable to find the keys. Officer Mason remained at the scene until the owner of the truck came to retrieve it. Due to the flat tire, however, the truck was not towed until later that day.

On cross-examination, Officer Mason confirmed that the Defendant smelled of alcohol, but Officer Mason did not perceive him to be "too intoxicated." Officer Mason said that Ms. Jones never mentioned a third person who had driven the truck.

The Defendant called Stephanie Ogle, the authorized keeper of records for the Knox County Criminal Court clerk's office, to testify. Ms. Ogle identified a certified copy of an appearance bond. She confirmed that the document indicated that the Defendant was released on bond on January 20, 2015.

Melvin Miller testified that he was a professional bondsman in Knox County. He did not process the Defendant's bond but had many years of experience with bonds. In his experience, it generally took two to three hours for an inmate to be released after he had submitted the paperwork but in some cases had taken up to five or six hours.

Based upon this evidence, the jury convicted the Defendant of theft of property valued at $1,000 or more but less than $10,000 and acquitted the Defendant of the vandalism charge. The trial court sentenced the Defendant as a career offender to twelve years for a Class D felony. It is from this judgment that the Defendant appeals.[1]

## II. Analysis

On appeal, the Defendant asserts that the evidence supporting his conviction is insufficient and that the trial court erred in applying the Class D felony offense classification rather than the "new" Class E felony offense classification for his offense.

### A. Sufficiency of the Evidence

---

[1] The Defendant untimely filed his notice of appeal on February 23, 2017; however, this Court by order granted the Defendant's request for permission to waive timely filing of the notice of appeal on May 26, 2017.

The Defendant asserts that the evidence at trial did not establish that the Defendant was aware the truck had been stolen or that he intended to deprive the owner of the property without consent because the evidence showed that he told Ms. Jones that he intended to buy the truck and he made no attempt to leave Lonsdale Market after Ms. Jones called the police to investigate. The State maintains that there was sufficient evidence from which a jury could conclude that the Defendant intended to deprive Manis Motors of the truck and that he did so without the owner's consent. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

A person commits theft of property if that person: (1) "knowingly obtains or exercises control over the property," (2) "with intent to deprive the owner" of the property, and (3) "without the owner's effective consent." T.C.A. § 39-14-103 (2014). In addition to these three elements, the fact-finder must also determine the classification of the theft, based on the value of the property stolen. At the time of this offense and at the time of the trial and sentencing in this case, theft of property valued at $1,000 or more but less than $10,000 was a Class D felony. T.C.A. § 39-14-105(3) (2014). Theft may also be inferred by the mere possession of recently stolen goods. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995); *State v. Hatchett*, 560 S.W.2d 627, 629 (Tenn. 1987).

The evidence, viewed in the light most favorable to the State, shows that the Defendant visited Manis Motors car lot on January 20, 2017, and expressed an interest in purchasing a teal-green Ford Ranger truck, valued at $1,600 to $1,800. Later that night, the same Ford Ranger truck was taken, without permission, from Manis Motors and found in the Defendant's possession at nearby Lonsdale Market. While at the market, the Defendant told Ms. Jones that the truck was "his" and that he planned to buy it. The Defendant started the truck and invited Ms. Jones to "ride with him" to Merchant's. This evidence is sufficient for a jury to find that the Defendant knowingly exercised control over the truck with the intent to deprive Manis Motors of the truck and without the owner's permission.

Accordingly, we conclude that there is sufficient evidence to support the Defendant's conviction for theft of property valued at $1,000 or more but less than $10,000. The Defendant is not entitled to relief.

## B. Sentencing

The Defendant argues that the trial court incorrectly imposed a sentence for a Class D felony because the amended statute allows for the offense to be classified as an E felony because the value of the item stolen was less than $2,500. The State responds that the amended version of the statute had not yet gone into effect at the time of the sentencing hearing, and therefore the trial court correctly imposed a sentence for a Class D felony. We agree with the State.

At the August 26, 2016 sentencing hearing, the Defendant argued that a new Tennessee law, going into effect on January 1, 2017, would allow the Defendant to be sentenced to six years rather than twelve. The new statute classified theft of property valued between $1,000 and $2,500 as a Class E felony. The statue he was convicted of violating classified theft of property valued at $1,000 or more but less than $10,000 as a Class D felony. Claiming the savings statute, the Defendant argued he was entitled to a punishment for a Class E felony. The State argued that because the statute expressly stated that the law did not go into effect until January 1, 2017, the trial court must sentence the Defendant under the current law. After consideration, the trial court ruled that the new law was not in effect and therefore did not apply. The trial court sentenced the Defendant as a career offender to serve the mandatory twelve year sentence for a Class D felony.

The Tennessee Constitution, article 2, section 20, provides that no general law "shall take effect until forty days after its passage, unless the same or the caption shall state that the public welfare requires that it should take effect sooner." Tennessee courts have held that the legislature may, by the terms of the act itself, postpone its taking effect to a period beyond the forty days. *State ex rel. v. Trewhitt*, 82 S.W. 480, 483 (Tenn. 1904). "In cases where the legislature provides an effective date, the effective date become[s] an expression of the legislative will in the form of a rule of action prescribed for the regulation of the conduct and affairs of the people; but it is a part of the same expression that the people shall not be compelled or permitted to act thereunder until the expiration of a time fixed." *Wright v. Cunningham*, 91 S.W. 293, 295 (Tenn. 1905).

Tennessee Code Annotated section 39-14-105 was amended and, by its own terms, the amendment did not become effective until January 1, 2017. The sentencing hearing in this case was held on August 26, 2016, and the trial court took this issue under advisement. A subsequent hearing was held on September 16, 2016, during which he

declined to sentence the Defendant pursuant to the amended statute. Because the statute was not effective until January 1, 2017, the trial court did not err in sentencing the Defendant pursuant to the laws in effect at the time of sentencing. The Defendant is not entitled to relief as to this issue.

## III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE